Filed 8/7/15  P. v. Gallegos CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CARLOS GALLEGOS,<br><br>    Defendant and Appellant. | B258534<br><br>(Los Angeles County<br>Super. Ct. No. PA077433) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David B. Gelfound, Judge.  Affirmed.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Carlos Gallegos was convicted of second degree robbery, in violation of Penal Code section 211.[1]  The jury found true the allegation that a principal in the commission of the robbery was armed with a firearm, within the meaning of section 12022, subdivision (a)(1).  In a separate proceeding, the trial court found that defendant had suffered a prior strike conviction within the meaning of the three strikes law (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)), he had suffered a prior serious felony conviction (§ 667, subd. (a)(1)), and he had served two prior prison terms (§667.5, subd. (b).)[2]  The court sentenced defendant to 16 years in state prison:  five years for robbery doubled under the three strikes law; five years for the section 667, subdivision (a) enhancement; and one year for the principal armed allegation under 12022, subdivision (a)(1).

Defendant contends the conviction was based on an unduly suggestive single-person photographic identification, and his trial counsel's failure to make an in limine motion to suppress the pretrial identification constituted ineffective assistance of counsel.  The substantive claim the pretrial identification was unduly suggestive is forfeited due to the absence of an objection in the trial court.  Defendant's further claim that defense counsel provided constitutionally inadequate representation is not cognizable on direct appeal, and in any event, defendant fails to establish prejudice.  We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Chrustian Alonso and defendant first met in January 2013 through a mutual friend, at which point defendant purchased a male JoJo brand watch from Alonso for

---

[1] All statutory references are to the Penal Code, unless otherwise indicated.

[2] One of the prior prison term enhancements was not imposed because it was based on the same offense used for the section 667, subdivision (a) enhancement.  The trial court dismissed the second prior prison term allegation.

approximately $700. Alonso and defendant remained in contact after this initial purchase, and Alonso at some point met defendant's wife and daughter. A day before the robbery, defendant made an appointment with Alonso to meet at Yadira's jewelry store in downtown Los Angeles to ensure that the jewelry Alonso was selling was authentic. Alonso took with him a black Louis Vuitton bag containing around 25 items of jewelry, including various watches and rings. During the meeting at the jewelry store Alonso was taken to a back room to receive appraisals for the jewelry he was selling, but no jewelry was sold at that time. Zarife Mejia, the owner of the jewelry store where defendant and Alonso met, denied having taken Alonso to a back room and denied providing Alonso with appraisals because she did not "know the prices on the watches. I don't know if they are original or not." Upon leaving the jewelry store, defendant suggested to Alonso that he could sell his jewelry to a man named Pedro. Defendant and Alonso arranged to meet the next day on Rinaldi Street, after which Alonso would then follow defendant to Pedro's house to sell his jewelry.

On February 19, 2013, between 7:00 p.m. and 8:00 p.m., Alonso met defendant on Rinaldi Street near the 118 freeway driving a metallic gray Audi A8. Defendant, who was driving a white Mercedes ML 550, led Alonso to the house of a man who was supposed to purchase Alonso's jewelry. Alonso followed defendant into the circular driveway of a house, where they stopped and began talking on the phone about how defendant's wife was going to come out of the house and show them in. Alonso observed an unknown woman exit the house, enter a car and leave.[3] After his phone conversation with defendant, Alonso got out of his car and reached for the Louis Vuitton bag, which included a ladies Technomania watch, a Coram watch, and a guarantee for a JoJo watch.

---

[3] This woman was Christina Mayberry, who was at the house visiting a friend. She testified that she saw a light car and a dark car parked in front of her friend's home when she came out to leave, but that the cars were parked on the street and not in the driveway.

As Alonso was getting the bag, a black Honda Civic pulled up, and two men, one with a gun, got out of the car and approached Alonso. The man with the gun aimed the gun at Alonso and told Alonso to give him the bag of jewelry. A struggle ensued and the man without the gun took the jewelry bag from Alonso. Alonso testified that he heard defendant direct the men to take Alonso's car and cell phone. The man with the gun began to take the watch Alonso was wearing, and Alonso asked defendant to stop him from taking it. Alonso testified that defendant told the man with the gun to leave the watch, but the man with the gun took it anyway. Defendant then drove off in his Mercedes along with the two men in the Honda, and Alonso quickly got into his car and began pursuit.

As Alonso approached the two vehicles, one of the men in the Honda leaned out of the right passenger window and began shooting toward Alonso, at which point Alonso sped up to pass the Honda and began pursuit of defendant's Mercedes. Alonso lost sight of defendant, who was driving at approximately 70 miles per hour down a residential area, but found him again as defendant was quickly approaching Alonso's vehicle. Defendant's car collided with the front of Alonso's vehicle. Defendant continued driving with Alonso in pursuit onto Reseda Boulevard. The traffic light was red as they approached Rinaldi from Reseda. When Alonso turned right, defendant made a right turn in front of him that resulted in a second collision.[4] This collision caused damage to the front right side of Alonso's Audi and the rear left side of defendant's Mercedes. After the second collision, defendant continued driving onto the westbound 118 freeway onramp. Alonso followed for some time until he decided to take the Topanga exit.

Upon exiting the 118 Freeway, Alonso went to a gas station to call the police and report the robbery. At around 7:50 p.m. on February 19, 2013, Los Angeles Police Officer Robert Luna and his partner responded to a robbery call at a gas station in the area of Topanga and Devonshire. The officers observed Alonso's car had visible

---

[4] Alonso told the police officers who responded to his 911 call that he purposefully "collided his front bumper with the suspect's left rear courter panel in an attempt to stop the suspect from getting away."

4

damage. They took Alonso's account of the robbery and examined the area where Alonso indicated the shooting occurred, but were unable to find any evidence of a shooting. At the site of the second collision at Reseda and Rinaldi the officers recovered three white objects that they later determined were part of the same make and model as the Mercedes defendant was driving the night of the robbery.

On February 20, 2013, Detective David Keating of the Los Angeles Police Department interviewed Alonso at the police station. Alonso provided Detective Keating with a serial number for the Corum watch that was stolen (1684869) as well as the login information for his Craigslist account. Alonso was shown a photograph of defendant, which he identified as that of the man who robbed him. When Detective Keating showed Alonso the picture of defendant, "his palms became visibly sweaty. His face was perspiring and he was tearful." Later in the investigation, Detective Keating showed Alonso a picture of a white Mercedes ML 550. Alonso identified the vehicle in the picture as the Mercedes driven by defendant. It had damage consistent with the collisions that occurred on February 19, 2013.

On May 7, 2013, Alonso contacted Detective Keating to inform him that he had found some of the jewelry that had been stolen from him on eBay. Detective Keating organized a sting operation to recover Alonso's stolen property and apprehend the sellers. Officer Diane Hawking of the Los Angeles Police Department, working with Detective Keating and Detective Ruben Arellano, responded to an eBay posting for a Corum watch and arranged to meet the seller. On May 16, 2013, Officer Hawking met with the seller, David Tagvoryan,[5] who brought along the Corum watch he had listed on eBay. The serial number matched that of the stolen Corum watch. David was detained. With David's permission, Detective Arellano, accompanied by other officers, went to the home of David's father, Oganes Tagvoryan, and found a light blue J.P.M. Techno watch as well as a JoJo warranty card. Detective Phelps, along with Detective Arellano, showed

_____

[5] Because two witnesses who share the last name of Tagvoryan, we will refer to them by their first names.

5

Oganes a photo of defendant, and Oganes identified defendant as one of the men who sold him the watches in February.  Oganes explained to Detective Arellano that one of the men who sold him the watches was short in height and had tattoos on his head.

David testified that in February 2013, two men came into his father's marijuana collective asking if David was interested in purchasing jewelry.  David was not interested, but said he would ask Oganes.  Oganes proceeded to talk with the two men and purchased two watches.  Oganes did not identify defendant as the person who sold him the watches.  When asked whether he recognized the picture of defendant as the man who had sold him the watches, Oganes replied, "Maybe at that moment, yes."  Oganes testified that when the two men came into his marijuana collective to sell the watches, he conversed with them for 10 to 15 minutes and was standing about 3 to 4 feet away from them, so he had a good look at them.  When asked whether he had been honest with the police when he first identified defendant through the photograph on May 16, 2013, Oganes stated he had been honest and that the details of the sale of the watches in February were more fresh in his memory at that point than they were during trial.  Oganes further explained that when he was asked to identify defendant, he was "very sure" of his identification, but his recollection had changed at trial since it had been "almost a year or more."

### DISCUSSION

Defendant first contends that Oganes's identification was the result of an unduly suggestive single-photo lineup procedure that created a substantial likelihood of an inaccurate identification.  Defendant's failure to make a specific and timely objection, however, forfeits his arguments on appeal.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 989; see also *People v. Medina* (1995) 11 Cal.4th 694, 753 ["Defendant asserts the identification procedure was unduly suggestive and unreliable . . . but his failure to object waived the point"].)  We therefore turn to defendant's contention that the failure to suppress the pretrial identification constitutes ineffective assistance of counsel.

6

A criminal defendant's right to effective assistance of counsel is based upon the constitutional right to counsel guaranteed by the Sixth Amendment to the United States Constitution and by Article I, section 15 of the California Constitution. (*People v. Pope* (1979) 23 Cal.3d 412, 422, overruled on other grounds by *People v. Berryman* (1993) 6 Cal.4th 1048, overruled on other grounds by *People v. Hill* (1998) 17 Cal.4th 800.) In order to establish such a claim, a defendant must establish (1) that his counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that, but for counsel's error, a different result would have been reasonably probable, thus resulting in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, at p. 694.) Defendant has the burden of proving ineffective assistance of counsel. (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) "If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.) The Supreme Court has held that "[t]he performance component [of the analysis] need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' (*Strickland v. Washington,* [*supra*,] 466 U.S.[] at [p.] 697.)" (*Smith v. Robbins* (2000) 528 U.S. 259, 286, fn. 14.)

Defendant's claim of ineffective assistance of counsel is not cognizable on direct appeal because the record fails to indicate the motivations for counsel's acts or omissions. "'If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus. [Citation.]' [Citations.]" (*People v. Carter*, *supra*, 36 Cal.4th at p.

7

1189.)  Here, the record is silent on the issue raised by defendant, so it must be addressed in a habeas corpus petition.

Even if we were to consider the merits of the contention, the contention fails on both the performance and prejudice prongs of *Strickland v. Washington, supra,* 466 U.S. 668.  A single person showup does not, per se, violate due process.  (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)  Defendant makes no showing that the manner in which the photograph of defendant was shown suggested a particular response.  Considering that Oganes described to the officers the considerable amount of time he spent with the seller of the watches, there appears to be little reason to assemble a larger photographic lineup.

In addition, defendant cannot establish prejudice.  Not only did Alonso describe what happened in detail, remnants of defendant's white Mercedes were found at the scene of one of the collisions, officers observed damage to Alonso's vehicle, and the stolen property appeared on eBay and was traced, either directly or circumstantially, to someone meeting defendant's description.  No defense testimony was offered to refute the prosecution's strong case.  Prejudice has not been shown as a demonstrable reality.

Trial counsel pursued a vigorous cross-examination of each of the prosecution's witnesses, particularly Oganes and Detective Arellano.  Ultimately, the jury was the final arbiter of Oganes's reliability and credibility.  We are satisfied that defendant did not receive ineffective assistance of counsel.

# DISPOSITION

The judgment is affirmed.


       KRIEGLER, J.


We concur:


       TURNER, P. J.


       KIRSCHNER, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.